11 MURRAY, Judge.
Plaintiff, the Louisiana Landmarks Society, Inc., appeals the dismissal of its action based upon the trial court’s granting of various exceptions raised by defendants, the Audubon Park Commission and the City of New Orleans. For the reasons that follow, we affirm.
The Audubon Park Commission [hereinafter “the Commission”], a political subdivision of the State of Louisiana, operates Audubon Park, the Audubon Zoo, the Aquarium of the Americas, the Louisiana Nature and Science Center, and several other related facilities within the City of New Orleans. On April 5, 2001, the Commission adopted a bond resolution proposing the issuance of bonds pursuant to Louisiana Act 309 of 1986 (which originally authorized the funding and construction of the Aquarium of the Americas)[1] to develop an Audubon “Insectarium” within space leased in the U.S. Custom House in New Orleans. This bond resolution was published in the Times-Picayune, the official journal of the City of New Orleans, on April 12, 2001, and was subsequently approved by the Board of Liquidation, City Debt [hereinafter “Board of Liquidation”] on April 18, | ¡.2001, and by the City Council on May 4, 2001. On June 4, 2001, the Louisiana Landmarks Society [hereinafter “LLS”] filed the instant action[2] challenging the bond resolution and seeking to enjoin the issuance of the bonds. The substance of the plaintiffs claim is that the use of the Aquarium bond proceeds is improper because an insectarium is not a facility “related to” the Aquarium within the terms of Act 309; that proceeds of the special tax authorized by Act 309 cannot be used on leased premises; and finally, that an insectarium cannot legally be built outside of the geographic boundaries of “Audubon Park,” as that term is defined by Act 309. In response to the plaintiffs petition, the defendants asserted numerous declinatory, dilatory and peremptory exceptions,[3] alleging generally that the action was untimely and that the plaintiffs had failed to follow the procedural requirements for challenging a bond resolution set forth by the Legislature in Act 309, as well as in Article VI, Section 35(B) of the Louisiana Constitution and in the Louisiana Bond Validation Act, LSA-R.S. 13:5121 et seq. In accordance with the expedited procedure set forth in R.S. 13:5125, the district court heard the exceptions on July 5, 2001, and rendered judgment on July 11, 2001, maintaining seven of the original eight exceptions raised by defendants[4] and dismissing the plaintiffs petition and in *81 corporated motion with prejudice. Most significantly, the district court held that LLS’s action was not timely because it was filed more than|3thirty days after the publication of the bond resolution in the Times-Picayune, and was, therefore, barred by peremption, a defect that cannot be cured. LLS now appeals this judgment on an expedited basis, pursuant to the provisions of R.S. 13:5128.
On appeal, LLS asserts that the district court committed legal error by maintaining the seven exceptions. We first consider the issue of timeliness, addressed by the peremptory exception of prescription/ preemption/ no cause of action.
The petition filed by LLS “contests and seeks to enjoin the issuance of certain special ad valorem tax bonds and other actions related thereto” by the Commission and the City on the basis that the bond resolution is contrary to the provisions of Act 309 of 1986, its enabling legislation. The petition further recites that the suit is being brought pursuant to LSA-R.S. 13:5121 et seq., the Louisiana Bond Validation Act. Section 12(0) of Act 309 states:
The bond resolution shall be published in one issue of the official journal of the City of New Orleans. For a period of thirty days from the publication thereof, any person in interest may contest the legality of the bond resolution and of any provisions therein made for the security and payment of the bonds. After that time no one shall have any cause or right of action to contest the legality, formality, regularity, or effectiveness of the bond resolution and provisions therefor for any reason whatever. Thereafter it shall be conclusively presumed that every legal requirement for the issuance of the bonds has been met, and no court shall have authority to inquire into any of these matters after this thirty-day period. •
This language is repeated nearly verbatim in Section 35 of the bond resolution that was adopted on April 5 and published on April 12, 2001. Moreover, a virtually identical provision is contained in Article VI, Section |435(B) of the Louisiana Constitution with reference to the time limit for contesting any ordinance or resolution authorizing the issuance of bonds by a political subdivision of the state. LLS does not dispute that the instant lawsuit was filed more than thirty days from April 12, the date the above quoted bond resolution was published in the official journal of the city. Instead, it argues that the term “bond resolution,” as used in Act 309, does not refer to the resolution adopted by the Commission and published in the Times-Picayune, but rather, to that resolution combined with the subsequent resolutions of the Board of Liquidation and the City Council, which approved the resolution adopted by the Commission after its publication. Therefore, the plaintiff argues, the publication was premature and could not have triggered the beginning of the thirty-day peremptive period because there was not yet a bond resolution to publish.
As authority for this argument, LLS cites Section 12(D)(1) of Act 309, which provides, in pertinent part:
The bonds shall be authorized by and issued pursuant to a resolution or resolutions, collectively referred to as the “bond resolution”, adopted by majority vote of the membership of the commission and approved by the municipal governing authority and the board,[5] all as *82 hereinafter provided, and shall have such terms and conditions and features as provided in the bond resolution.
LLS contends that this sentence, particularly the inclusion of the phrase collectively referred to as the “bond resolution,” signifies that there exists no bond resolution until such is approved by the Board of Liquidation and the City Council. 1 ¡¡Therefore, according to LLS, the April 12th publication was without effect because the “bond resolution” could not legally be published until after May 3, 2001, when the City Council approved it. Under this scenario, since a second publication never occurred, the plaintiffs suit would not be time-barred; indeed, it would be premature.
We do not find plaintiffs argument to be persuasive. The interpretation of the above-quoted provision that plaintiff urges us to accept is not only a strained reading of the language itself, but is contrary to the use of the term “bond resolution” throughout the entirety of Act 309. With regard to the provision itself, if the phrase “collectively referred to as the bond resolution” meant what plaintiff claims it does, that phrase would appear at the end of the sentence, not at the beginning. A more logical interpretation of the provision is that the phrase is included to cover the situation in which more than one resolution, such as a primary and supplemental resolution(s) on the same issue, are adopted together as one bond resolution by the Commission. This interpretation comports with other sections of Act 309 in which the term “bond resolution” obviously refers to the resolution adopted by the Commission, regardless of whether it has yet been approved or considered for approval by either the Board of Liquidation or the City Council. For example, Section 12(F) of the Act states, in pertinent part:
(1) Upon adoption, the commission shall submit each bond resolution to the municipal governing authority and to the board for the approval of each, together with a statement containing the following:
(2) The bond resolution shall be approved by majority vote of the municipal governing authority and by majority vote of the board.
1986 La. Acts 309 (Emphasis added.)
| ((This language clearly indicates that the bond resolution exists upon its adoption by the Commission; otherwise, the above-quoted portion of the Act would state that the proposed bond resolution shall be submitted to and approved by the municipal governing authority and the board.
Two basic principles of statutory interpretation are that the words of a law must be given their generally prevailing meaning, and that when the words are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. Civ.Code arts. 11 and 12. To accept the interpretation of the Act 309 suggested by LLS would violate both these principles; therefore, we cannot do so.
LLS argues, nevertheless, that it is illogical to assume that the legislature intended for the bond resolution to be published and the peremptive period to begin before final approval by the City Council. It is not our function to search for or to speculate upon the intent of the legislature when a law is clear and unambiguous, as is Act 309; we are bound to apply the law as written. La. Civ.Code art. 9. However, we note that the state has a considerable interest in ensuring the marketability and security of governmental bonds, which interest the legislature has protected by enacting the Louisiana Bond Validation Act to provide a “uniform” and “expeditious” procedure for challenging the legality of *83 bonds. See La. R.S. 13:5122. Therefore, we find it reasonable to assume that the legislature did contemplate that the thirty-day period for challenging a bond resolution pursuant to Act 309 might begin before the resolution received final approval from the City Council.
Act 309 clearly requires that the bond resolution must be published only once, and does not specify when that publication must occur. It also clearly |7stipulates that any action contesting the bond resolution must be filed within thirty days of its publication to avoid peremption. LLS failed to meet this requirement. Accordingly, we conclude that the district court did not err by maintaining the exception of prescription/ peremption/ no cause of action based on the fact that the plaintiffs suit was filed untimely and is therefore perempted.
LLS alternatively argues that the district court erred by dismissing the entire suit with prejudice because, in addition to the challenge to the bond resolution under the Louisiana Bond Validation Act, which must be tried as a summary proceeding, the petition contained ordinary claims for declaratory judgment and in-junctive relief, which should survive. In response, the Commission and the city contend that the district court properly dismissed the entire case, because the “ordinary” claims asserted by LLS do not in reality constitute a separate cause of action. We agree.
The Bond Validation Act provides:
All suits, actions and proceedings of whatever nature affecting the validity of bonds of any governmental unit, or the interest thereon, or the sale thereof, or the election, if any, authorizing the issuance of said bonds shall be brought only in accordance with the provisions of this Title. These provisions shall supersede all other acts and statutes on the subject and be controlling in all such cases notwithstanding the provisions of any other law or charter to the contrary; provided, however, nothing herein contained shall affect, change, alter or modify in any way any peremptive or prescriptive period for the contesting of bonds of governmental units or elections authorizing their issuance, established pursuant to the constitution and statutes of this state which shall continue to govern the time within which actions covered thereby may be filed. It is hereby declared that it is the intention of the legislature in enacting this law to provide a uniform, expeditious and equitable procedure with due regard for the public fisc and rights of persons in interest for the judicial determination of the validity of bonds and related proceedings where material and substantial questions with regard thereto are involved or a judicial determination of issues relating to bonds is necessary to insure the marketability of bonds in investment channels. It is not the intention | sof the legislature to require or to encourage the validation of all bonds by the judiciary.
La.Rev.Stat. Ann. § 13:5122 (West 1991) (Emphasis added.)
The petition of LLS contests the validity of the bond resolution adopted by the Commission on April 5, 2001, on the basis that the bonds will be used for an improper purpose, that is, a purpose which plaintiff alleges is outside the scope of Act 309, the enabling legislation for the bond resolution. All three of plaintiffs substantive allegations — namely, that the bond proceeds will be used to construct a facility which is: (1) not “related to” the Aquarium within the meaning of Act 309; (2) not allowed to be located within leased premises ' by terms of Act 309; and (3) not allowed to be placed at a geographic location *84 outside the limits of “Audubon Park” by authority of Act 309 — fall within the category of actions which affect the validity of governmental bonds. Therefore, regardless of how the claims are styled or what relief is sought, the plaintiffs exclusive remedy is by means of an action brought under the Bond Validation Act, as expressly stated in R.S. 13:5122. For this reason, we conclude that the district court did not err by dismissing the entire suit with prejudice.
Our conclusion that the action was correctly dismissed as being untimely and therefore perempted makes it unnecessary for us to address LLS’s contention that the remaining exceptions were improperly granted. Accordingly, for the reasons stated, we affirm the judgment of the district court.
AFFIRMED

. Act 309 amended Act 191 of 1914, which legislatively created the Audubon Park Commission.

. Plaintiff filed a three-part pleading including a Petition for Declaratory Judgment, Petition for Injunctive Relief, and Motion for Judgment Contesting and Enjoining Bond Issuance.

. The exceptions included: Insufficiency of Citation, Insufficiency of Service of Process, Lack of Subject Matter Jurisdiction, Unauthorized Use of Summary Proceedings, Lack of Procedural Capacity, Improper Cumulation of Actions, Prescription or Alternative Plea of Peremption or Alternative Exception of No Cause of Action, and Exception of No Right of Action or No Interest in the Plaintiff.

.The Exception of No Right of Action or No Interest in the Plaintiff is not mentioned in the judgment.

. The terms "commission,” "municipal governing authority” and "board” are defined elsewhere in Act 309 as referring to the Audubon Park Commission, the City Council of New Orleans, and the Board of Liquidation, City Debt, respectively.